IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 18, 1999

STATE OF TENNESSEE EX REL. PAULA DEAN BUCHANAN v.
JOSEPH TULLY BUCHANAN, III

Appeal from the Circuit Court for Davidson County
No. 93D-3872    Muriel Robinson, Judge

No. M1998-00962-COA-R3-CV - Filed January 22, 2002

This appeal involves a belated dispute over unpaid child and spousal support.  After their divorce,
the former spouses twice changed the custody arrangements and support obligation in their 1993
divorce decree without obtaining court approval.  In 1998, a private Title IV-D contractor, acting on
behalf of the State of Tennessee, filed suit in the Circuit Court for Davidson County seeking to
collect $59,150 in unpaid child support and spousal support from the former husband.  The trial court
held that the former husband could not, as a matter of law, assert the defenses of laches, estoppel,
or waiver against these claims, granted a $51,250 judgment against the former husband, and placed
a judgment lien against the former husband's house.  While the trial court correctly determined that
the former husband could not assert equitable defenses with regard to the child support arrearage,
the trial court erred by refusing to permit him to assert equitable defenses against the claim for
unpaid spousal support.  Accordingly, we vacate the portion of the judgment awarding the wife
$29,150 for unpaid spousal support and remand the case for further proceedings.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and
Vacated in Part

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and
PATRICIA J. COTTRELL, JJ., joined.

Thomas D. Frost, Murfreesboro, Tennessee, for the appellant, Joseph Tully Buchanan, III.

Paul G. Summers, Attorney General and Reporter; and Stuart F. Wilson-Patton, Assistant Attorney
General, for the appellee, State of Tennessee, ex rel. Paula Buchanan.

OPINION

I.

        In November 1993, Paula D. Buchanan obtained a divorce from Joseph T. Buchanan, III on
the ground of inappropriate marital conduct.  The Circuit Court for Davison County gave Ms.
Buchanan custody of the parties' two children who were then seventeen and fourteen years old and

directed Mr. Buchanan to pay $850 per month in child support. In recognition of the children's ages, the final decree of divorce stated that Mr. Buchanan's child support obligation would be reduced "after a period of two years" and thereafter that Mr. Buchanan would pay $650 per month in child support for three years. The decree also obligated Mr. Buchanan to pay Ms. Buchanan $550 per month in spousal support for five years.[1]

The final decree of divorce contained a provision governing changes in Mr. Buchanan's child support obligation. In keeping with Tenn. Code Ann. § 36-5-101(h) (2001), the decree stated:

> **MODIFICATION OF CHILD SUPPORT.** The parties acknowledge that no action by the parties will be effective to reduce child support after the due date of each payment and they understand that Court approval must be obtained before child support may be reduced, unless such payments are automatically reduced or terminated under the terms of the Agreement.

During the summer of 1994, the parties decided to change the custody arrangement in the November 1993 divorce decree. Mr. Buchanan moved out of his parents' basement and rented a three-bedroom apartment. In August 1994, the parties' two children moved into Mr. Buchanan's apartment. This change placed a financial strain on Mr. Buchanan because his old job had been phased out and he had been forced to find a new job that paid only seventy-five percent of what he had been earning when the parties were divorced. According to Mr. Buchanan, he and Ms. Buchanan agreed that he could stop paying both child support and spousal support after the children began living with him.[2] The parties did not seek judicial approval of this modification of custody or support.

The children remained with Mr. Buchanan until November 1995 when the parties' son returned to live with Ms. Buchanan. When Ms. Buchanan "requested some payment" of child support, Mr. Buchanan told her that he could not pay child support unless the parties' daughter also moved back in with her. He explained that he could avoid the expense of the apartment by moving back into his parents' house if both children were not living with him. According to Mr. Buchanan, Ms. Buchanan "agreed that [he] would not have to pay any sums" as long as the parties' daughter remained with him and as long as he paid the tuition for their son's private school. Like their agreement in 1994, the parties did not seek judicial approval of this custody modification.

The parties' daughter dropped out of high school following her eighteenth birthday. In December 1997, following his eighteenth birthday, the parties' son also dropped out of school, got

---

[1]This appeal is here on the technical record alone because neither party has furnished us with a transcript or statement of the evidence. While appellate courts do not ordinarily consider statements in pleadings as the facts of the case, *State v. Bennett*, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990), we have no alternative in this case other than to glean this appeal's factual framework from the recitals in the trial court's order and the statements in the sworn pleadings filed by the parties.

[2]According to Mr. Buchanan, Ms. Buchanan began living with another man in 1994 who contributed to her support.

a job, and moved out of Ms. Buchanan's house. Mr. Buchanan eventually remarried, and he and his new wife purchased a home in Mt. Juliet, Tennessee. Ms. Buchanan also remarried in April 1998.

In February 1998, Child Support Services of Davidson County, a private Title IV-D contractor[3], filed a petition on behalf of the State of Tennessee in the Circuit Court for Davidson County seeking to hold Mr. Buchanan in civil and criminal contempt for willfully failing to pay child support and spousal support. In response to this petition, Mr. Buchanan filed a motion to terminate his child support obligation and filed an answer denying that he was in contempt of the final decree of divorce because he had stopped paying both child and spousal support in reliance "on the agreement which he thought existed" with Ms. Buchanan. Relying on the equitable defenses of laches, estoppel, and waiver, Mr. Buchanan asserted that he should not now be required to pay either the child or the spousal support.

Following a bench trial, the trial court entered an order in July 1998 finding that Mr. Buchanan was in "willful contempt for failure to pay child support and alimony." After concluding that "the defenses of laches, estoppel, and waiver do not apply to child support or alimony," the trial court awarded the State a judgment for $22,100 for unpaid child support[4] and $29,150 for unpaid spousal support. The trial court also directed Mr. Buchanan to pay down this arrearage with payments of $420 per month and imposed both a wage assignment and a lien against Mr. Buchanan's home to secure the judgment.

## II.
### THE CHILD SUPPORT ARREARAGE

We turn first to Mr. Buchanan's assertion that the trial court erred by refusing to permit him to assert the equitable defenses of laches, estoppel, and waiver against the State's claim for his unpaid child support. Despite Mr. Buchanan's protestations of unfairness, the Tennessee General Assembly's enactment of Tenn. Code Ann. § 36-5-101(a)(5) (2001) in 1987 effectively prevents him from asserting any equitable defenses that would have the effect of retroactively modifying his child support obligation. *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991); *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 837 (Tenn. Ct. App. 1997). By operation of law, Mr. Buchanan alone, as the obligor parent, must bear the burden of the parties' failure to return to court to obtain approval for the 1994 and 1995 modifications of their custody arrangements and his child support obligation.

## III.
### THE SPOUSAL SUPPORT ARREARAGE

---

[3] Child Support Services of Davidson County is a private entity that contracted with the Tennessee Department of Human Services to provide Title IV-D child support collection services in Davidson County. Prior to 1992, the District Attorney General for the Twentieth Judicial District had performed these services. *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 177 n.9 (Tenn. Ct. App. 2000); *Baker v. State ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 WL 749452, at *1, n.2 (Tenn. Ct. App. Dec. 5, 1997) (No Tenn. R. App. P. 11 application filed).

[4] The trial court gave Mr. Buchanan a $10,200 credit against his child support obligation "for the 12 months the children resided with the Respondent."

Mr. Buchanan also takes issue with the trial court's conclusion that he could not interpose equitable defenses against the claim for unpaid spousal support. The State responds that we should decline to consider this issue because Mr. Buchanan failed to provide a transcript or statement of the evidence. We have determined that Mr. Buchanan may raise this issue because it is an issue of law rather than an issue of fact and that the trial court erred when it ruled that Mr. Buchanan could not assert equitable defenses against the State's derivative claim for unpaid spousal support.

This appeal is before us without a transcript or statement of the evidence. Accordingly, the State asserts that we must uphold the trial court's decision based on the presumption that there was sufficient evidence before the trial court to support its decision. *Manufacturers Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000); *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). This argument will succeed if Mr. Buchanan is taking issue with the factual foundation of the trial court's decision; however, it will not succeed if Mr. Buchanan is taking issue with the legal basis for the trial court's decision.

The State argues that the trial court's decision not to permit Mr. Buchanan to assert equitable defenses against the claim for unpaid spousal support was a factual rather than legal one. It boldly asserts that "[t]here is nothing in the record which would indicate that the trial court did not allow Mr. Buchanan to present his proof as to alleged equitable defenses to accumulated alimony" — nothing save the language of the court's order which was drafted by Child Support Services of Davidson County.

Judgments should be construed using the same rules used to construe other written instruments. *Gray v. Estate of Gray*, 993 S.W.2d 59, 63-64 (Tenn. Ct. App. 1998); *Livingston v. Livingston*, 58 Tenn. App. 271, 281, 429 S.W.2d 452, 456 (1967). Accordingly, we endeavor to construe a judgment fairly and reasonably, *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995), by giving its language its usual, natural, and ordinary meaning. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001).

The judgment at issue in this case does not recite that the trial court found that Mr. Buchanan had failed to produce sufficient evidence to make out a defense predicated on either laches, estoppel, or waiver. Rather, it states that "[t]he [c]ourt finds that the defenses of laches, estoppel, and waiver do not apply to child support or alimony." The most reasonable construction of this language is that the trial court equated claims for unpaid spousal support with claims for unpaid child support and held that, as a matter of law, the defenses of laches, estoppel, and waiver do not apply to these claims. Because the trial court's decision is based on an application of a legal principle rather than on a determination of fact, the factual presumption arising from the absence of a transcript or statement of the evidence is inapplicable.

The only remaining question is whether the restrictions regarding the defenses to claims for unpaid child support apply to defenses to claims for unpaid spousal support. The short answer to this question is that they do not. Child support and spousal support are distinct legal obligations. *Chadwell v. Chadwell*, M1999-00675-COA-R3-CV, 2000 WL 688715, at *2 (Tenn. Ct. App. May 30, 2000) (No Tenn. R. App. P. 11 application filed). Tenn. Code Ann. § 36-5-101(a)(5)'s restrictions against retroactive modification apply only to child support obligations. While the

defenses of laches, estoppel, and waiver may not be asserted against a claim for unpaid child support, they may be asserted against claims for unpaid spousal support. *Archer v. Archer*, 907 S.W.2d 412, 416-18 (Tenn. Ct. App. 1995) (recognizing the availability of a laches defense); *Brewer v. Brewer*, 869 S.W.2d 928, 933-34 (Tenn. Ct. App. 1993) (upholding a waiver defense); *Pirrie v. Pirrie*, 831 S.W.2d 296, 299 (Tenn. Ct. App. 1992) (recognizing the availability of a laches defense). Accordingly, the trial court erred by concluding that the defenses of laches, estoppel, and waiver do not "apply" to claims for unpaid spousal support.

## IV.

We affirm the portion of the judgment ordering Mr. Buchanan to pay the State $22,100 in unpaid child support at the rate of $420 per month. We vacate the portion of the judgment ordering Mr. Buchanan to pay the State $29,150 in unpaid spousal support and remand the case to the trial court for a full hearing on the State's claim and Mr. Buchanan's equitable defenses to the claim. We also direct the trial court to reduce the amount of the lien against Mr. Buchanan's home in Mt. Juliet to the unpaid balance of the $22,100 judgment for unpaid child support. We tax the costs of this appeal to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., JUDGE